**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| GEORGE BENNETT, | ) |
|            Petitioner, | )<br>) Docket no. 1:16-cv-251-GZS |
| v. | ) Docket no. 1:94-cr-11-GZS<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
|            Respondent. | ) |

**ORDER GRANTING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Before the Court is Petitioner George Bennett's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 255 in 1:94-cr-11-GZS). For reasons briefly explained herein, the Motion is GRANTED.

Bennett is currently serving a 360-month sentence, which is the result of being convicted on three counts: (1) conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 841(b)(1)(D) (Count I), (2) use or carrying of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count II), and (3) possession of a firearm by a convicted felon in violation of 19 U.S.C. § 922(g)(1) (Count IV). With respect to Count IV, Bennett was found to be an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).[1] Specifically, the Court referenced four prior felony convictions in sentencing Bennett under ACCA (PSR ¶ 32): (1) a January 3, 1986 Maine Aggravated Assault conviction (PSR ¶ 57); (2) a December 14, 1979 Maine Aggravated Assault conviction (PSR ¶ 53); (3) a December 14, 1979 Maine Criminal Threatening with a Dangerous Weapon

---

[1] Absent his armed career criminal designation, Bennett's Count IV conviction would have a ten-year statutory maximum.

conviction (PSR ¶ 53); and (4) a September 28, 1978 Maine Aggravated Assault conviction (PSR ¶ 51).

Following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015) (Johnson II), Bennett now argues that he no longer has the three requisite convictions for an increased sentence under ACCA. See Welch v. United States, 136 S. Ct. 1257, 1265 (2016). Rather, Bennett argues that his convictions yield a statutory maximum term of imprisonment of fifteen years, thereby entitling him to immediate release.

### A. ACCA's Different Occasions Requirement

The first issue the Court must address is whether the two convictions listed in paragraph 53 of the PSR should be considered one or two convictions for purposes of ACCA. This issue turns on whether the two counts of conviction, one for aggravated assault and one for criminal threatening with a dangerous weapon, were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Under governing First Circuit precedent,

> The "occasions" inquiry conceivably may turn upon any combination of circumstances, including (but not limited to) the identity of the victim; the type of crime; the time interval between the crimes; the location of the crimes; the continuity *vel non* of the defendant's conduct; and/or the apparent motive for the crimes. See United States v. Letterlough, 63 F.3d 332, 335-36 (4th Cir. 1995). Thus, the "occasions" inquiry requires a case-by-case examination of the totality of the circumstances. See, e.g., United States v. Riddle, 47 F.3d 460, 462 (1st Cir. 1995).

United States v. Stearns, 387 F.3d 104, 108 (1st Cir. 2004); see also United States v. Jenkins, 770 F.3d 507, 510 (6th Cir. 2014) (finding nine burglaries were committed on different occasions), *cert. denied*, 135 S. Ct. 1511 (2015). Based on the information submitted by the Government (Ex. GX-1 (ECF No. 261-1)) as well as the description contained in the PSR, the Court recognizes that there were two different victims, but nonetheless concludes that the two convictions contained in paragraph 53 occurred on the same occasion. (See PSR ¶ 53 (explaining how Bennett encountered

2

the two victims in the same place at the same time and that Counts I & II occurred "on this same occasion").)[2]

Having determined that the convictions listed in paragraph 53 may only count as a single ACCA-qualifying offense, the Court readily finds that Bennett's conviction for Criminal Threatening with a Dangerous Weapon in violation of 17-A M.R.S.A. § 209 & 1252(4) categorically qualifies as a violent felony under the force clause. See, e.g., United States v. Collins, 811 F.3d 63, 66-69 (1st Cir. 2016) (finding a Maine conviction for criminal threatening with a dangerous weapon qualifies as "a crime of violence under the Force Clause" of the career offender guidelines); United States v. Whindleton, 797 F.3d 105 (1st Cir. 2015) (holding that a Massachusetts conviction for assault with a deadly weapon qualifies as a violent felony under ACCA's force clause).

### B. Categorical Analysis of Maine's Aggravated Assault Statute

With one ACCA-qualifying violent felony stemming from his December 14, 1979 conviction, the Court must next consider whether Bennett's convictions under Maine's Aggravated Assault statute qualify as a violent felonies under 18 U.S.C. § 924(e)(1) & (2)(B)(i). Applying a pure categorical approach, the Court first examines the Maine statute, which provides:

> **1.** A person is guilty of aggravated assault if that person intentionally, knowingly or recklessly causes:
> **A.** Bodily injury to another that creates a substantial risk of death or extended convalescence necessary for recovery of physical health. Violation of this paragraph is a Class B crime;
> **A-1.** Bodily injury to another that causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ. Violation of this paragraph is a Class A crime;
> **B.** Bodily injury to another with use of a dangerous weapon. Violation of this paragraph is a Class B crime; or
> **C.** Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, the observable

---

[2] The Court notes that the record contains no objections to this "same occasion" description in the PSR.

physical condition of the victim or the use of strangulation. For the purpose of this paragraph, "strangulation" means the intentional impeding of the breathing or circulation of the blood of another person by applying pressure on the person's throat or neck. Violation of this paragraph is a Class B crime.

17-A M.R.S.A. § 208.[3] Bennett asserts that this statute does not categorically qualify as a "violent felony" under the force clause, 18 U.S.C. § 924(e)(2)(B)(i), due to the fact that recklessness is an insufficient mens rea for purposes of ACCA.[4]

Section 208, in fact, contains three different levels of mens rea, which are listed disjunctively. As the Supreme Court recently explained when examining the same disjunctive mens rea requirement as it appears in Maine's general assault statute, 17-A M.R.S.A. § 207:

> To commit an assault recklessly is to take that action with a certain state of mind (or *mens rea*)—in the dominant formulation, to "consciously disregard[ ]" a substantial risk that the conduct will cause harm to another. ALI, Model Penal Code § 2.02(2)(c) (1962); Me. Rev. Stat. Ann., Tit. 17–A, § 35(3) (Supp. 2015) (adopting that definition); see Farmer v. Brennan, 511 U.S. 825, 836–837 (1994) (noting that a person acts recklessly only when he disregards a substantial risk of harm "of which he is aware"). For purposes of comparison, to commit an assault knowingly or intentionally (the latter, to add yet another adverb, sometimes called "purposefully") is to act with another state of mind respecting that act's consequences—in the first case, to be "aware that [harm] is practically certain" and, in the second, to have that result as a "conscious object." Model Penal Code §§ 2.02(2)(a)-(b); Me. Rev. Stat. Ann., Tit. 17–A, §§ 35(1)-(2).

Voisine v. United States, --- S. Ct. ---, No. 14-10154, 2016 WL 3461559, at *4 (June 27, 2016).[5]

The Court necessarily acknowledges that most decisions to address the question have found that a

---

[3] The Court notes that this is the current version of the aggravated assault statute, which has undergone revisions since the time of Bennett's convictions in 1978 (PSR ¶ 51) and 1985 (PSR ¶ 57). However, it does not appear that any of those revisions would impact the determination of whether Maine's aggravated assault statute categorically qualifies as a violent felony for purposes of ACCA.

[4] To the extent that Bennett alternatively argues that 17-A M.R.S.A. § 208 does nor categorically require "force capable of causing physical pain or injury to another person," the Court declines to reach that argument given the analysis and conclusion contained in this decision. Johnson v. United States, 559 U.S. 133, 140 (2010).

[5] See generally United States v. Wright, 812 F.3d 27, 30-31 & n.2 (1st Cir. 2016) & Stein v. Maine Criminal Justice Academy, 95 A.3d 612, 618-19 (Me. 2014) (both cases discussing what qualifies as a "reckless" mens rea under Maine law).

4

conviction that requires a mens rea of only recklessness does not satisfy ACCA's force clause. See, e.g., United States v. Parnell, 818 F.3d 974, 981 & n.5 (9th Cir. 2016) (concluding that a Massachusetts conviction for assault and battery with a dangerous weapon did not qualify under the force clause and noting "the ACCA's force clause reaches only offenses requiring an intentional use of force"); United States v. Dixon, 805 F.3d 1193, 1197 (9th Cir. 2015) (explaining that under ACCA's force clause "the use of force must be intentional, not just reckless or negligent"); United States v. Duran, 696 F.3d 1089, 1095 (10th Cir. 2012) (holding that "aggravated assault under Texas law with a mens rea no higher than recklessness . . . is not categorically a crime of violence" under the career offender guidelines); United States v. Holloway, 630 F. 3d 252, 261-62 (1st Cir. 2011) (declining to categorically find that a reckless battery would be a "violent felony" for purposes of ACCA); United States v. McMurray, 653 F.3d 367, 374-75 (6th Cir. 2011) (holding that Tennessee's aggravated assault statute was not an ACCA-qualifying violent felony because "the 'use of physical force' clause of ACCA . . . requires more than reckless conduct"); see also Cutshaw v. United States, No. 209CR70RLJMCLC1, 2016 WL 3212269, at *2 (E.D. Tenn. June 7, 2016) (granting post-Johnson habeas relief upon finding that petitioner's conviction for Class D aggravated assault under Tennessee statute no longer qualified as a "violent felony" under the Force Clause since the statute defined that offense as "recklessly committing an assault that results in serious bodily injury, death, or the display of a weapon"). The Government itself acknowledges that "authorities are divided" on this issue and further notes that an appeal currently pending before the First Circuit may provide further guidance. (See Gov't Response (ECF No. 261) at 11-12.)

To add another wrinkle to the Court's analysis, after the parties completed their briefing of this Motion, the Supreme Court issued its decision in United States v. Voisine, --- S. Ct. ---, No.

5

14-10154, 2016 WL 3461559, at *4 (June 27, 2016). In Voisine, the Supreme Court held that the categorical possibility of an assault conviction having only a reckless mens rea would not foreclose its consideration as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(a). Id. at *8. In so holding, the Voisine majority explained, that there was not a "dividing line between reckless and knowing conduct" and that "[a] person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally." Id. at *6. Applying this same reasoning to the force clause of § 924(e)(2), this Court could categorically find that Bennett has two additional ACCA-qualifying aggravated assault convictions. However, the Court acknowledges that the Supreme Court has announced differing interpretations of "physical force" for § 924(e)(2)(B)(i) and § 921(a)(33)(a). Compare Johnson v. United States, 559 U.S. 133, 140 (2010) ("Johnson I") (explaining that in ACCA "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person") with Voisine v. United States, No. 14-10154, 2016 WL 3461559, at *5 (U.S. June 27, 2016) (describing the force requirement for a misdemeanor crime of domestic violence as "the 'active employment' of force"). Thus, it is far from clear that Voisine's inclusion of recklessness within the misdemeanor convictions covered by 18 U.S.C. §§ 922(g)(9) & 921(a)(33)(a) portends a similar interpretation of ACCA's force clause.

Rather, the logic and language of the Supreme Court's 2014 decision in Castleman make clear that the statutory interpretation of § 921(a)(33)(a) and § 924(e)(2)(B)(i) must be undertaken separately. See United States v. Castleman, 134 S. Ct. 1405, 1410-1412 (2014) (applying a "misdemeanor-specific meaning of 'force'" to interpret § 921(a)(33)(a)). In Castleman, the Supreme Court gave multiple reasons for distinguishing Johnson I's interpretation of § 924(e)(2)(B)(i) from the interpretation of the identical "physical force" language in §

921(a)(33)(a). Id. at 1410-13. Those reasons could equally support differing interpretations of the word "use" in these same statutes. See Voisine, 2016 WL 3461559, at *5-*6 (interpreting the term "use" for purposes of § 921(a)(33)(a)). After all, if Voisine's interpretation of "use" is applied to ACCA, three past convictions for injuries that result from reckless plate throwing (the example discussed at length in Voisine), or reckless driving,[6] could be sufficient to earn a designation as an "armed career criminal." See id. at *5. Labeling a thrice-convicted "Angry Plate Thrower" or "Reckless Policeman" as an "Armed Career Criminal" would appear to be the type of "comical misfit" the Supreme Court has previously indicated must be avoided when interpreting 18 U.S.C. § 924(e)(2)(B). Id. at *12-*15 (dissent description of the hypothetical "Angry Plate Thrower" and "Reckless Policeman") & Castleman, 134 S. Ct. at 1410 (explaining how Johnson I "declined to read the common-law meaning of 'force' into ACCA's definition of a 'violent felony,' because [the Court] found it a 'comical misfit with the defined term.'").

In Castleman, the Supreme Court expressly acknowledged an ongoing "hesitat[ion] . . . to apply the Armed Career Criminal Act to 'crimes which, though dangerous, are not typically committed by those whom one normally labels 'armed career criminals.'" Castelman, 134 S. Ct. at 1412 (citing Johnson I and quoting Begay v. United States, 553 U.S. 137, 146 (2008)). It is because of this expressed hesitation that the Court concludes the common-law interpretation of "use" announced in Voisine cannot be read to override the already-cited precedents holding that recklessness is an insufficient mens rea for purposes of ACCA. In short, having considered the somewhat confusing backdrop of recent precedents, the Court concludes that Maine's section 208

---

[6] By all accounts, such reckless actions could serve as the factual basis for a conviction under Maine's Aggravated Assault statute. See, e.g., State v. Pineo, 798 A. 2d 1093, 1097-98 (Me. 2002) (describing how one drunk driving event led to a conviction for aggravated OUI and two counts of aggravated assault).

7

cannot categorically satisfy the force clause such that all Maine convictions for aggravated assault qualify as violent felonies under ACCA. Thus, the Court declines to find that Bennett's September 28, 1978 Maine Aggravated Assault conviction (PSR ¶ 51) and his January 3, 1986 Maine Aggravated Assault conviction (PSR ¶ 57) categorically qualify as violent felonies under ACCA's force clause.

### C. Modified Categorical Analysis of Bennett's Aggravated Assault Convictions

Assuming that the Court could employ the modified categorical approach by deeming section 208 "divisible,"[7] the Court would then examine available Shepard-approved documents as contemplated by Descamps v. United States, 133 S. Ct. 2276, 2284 (2013). With respect to Bennett's 1986 Aggravated Assault conviction (PSR ¶ 57), the Government has provided the Court with the Indictment and Judgment (Ex. GX-1 (ECF No. 261-2)). As to the Aggravated Assault charge, the Indictment charges Bennett with "recklessly caus[ing] bodily injury . . . with the use of a dangerous weapon, namely, a knife." (Ex. GX-1 (ECF No. 261-2) at PageID # 142.) As relevant to the inquiry being conducted by this Court, the Judgment only clarifies that Bennett was convicted by way of jury verdict of the Class B Aggravated Assault charged in the Indictment. The reference to the use of a specified dangerous weapon adds the "additional dangerous-weapon element" that the First Circuit has indicated can convert a conviction into an ACCA-qualifying violent felony. Whindleton, 797 F.3d at 115; see also United States v. Fields, --- F.3d ---, No. 14-2137, 2016 WL 2821485, at *11-12 (1st Cir. 2016); United States v. Hudson, --- F.3d ---, No. 14-2124, 2016 WL 2621093, at *4 (1st Cir. 2016). However, the modified categorical approach still

---

[7] This approach would appear to be foreclosed by the reasoning contained United States v. Mathis, --- S. Ct. ---, No. 15-6092, 2016 WL 3434400, at *8 n.3 (describing Texas statute that criminalizes "intentionally, knowingly or recklessly" assaulting another as an "interchangeable means of satisfying a single mens rea element"). See also United States v. Geddie, 125 F. Supp. 3d 592, 598-600 (finding that a North Carolina conviction for assault with a deadly weapon inflicting serious injury reflected an indivisible statute despite disjunctive mens rea requirement).

8

does not allow this Court to conclude that Bennett's 1985 Aggravated Assault case necessarily involved a mens rea above and beyond reckless; in fact, "reckless" is the only mens rea referenced in the Indictment. Cf. Hudson, 2016 WL 2621093, at *4 (finding that "under Massachusetts decisional law an ADW conviction requires that the use or threat of physical force be intentional"). In any event, with respect to Bennett's other aggravated assault conviction (PSR ¶ 51), the Government has not provided the Court with any Shepard-approved documents. Thus, even assuming the modified categorical approach could be applied, the Court has no basis to conclude that Bennett's 1978 conviction is an ACCA-qualifying conviction post-Johnson. Thus, Bennett falls short of the three requisite ACCA-qualifying convictions even if the modified categorical approach is employed.[8]

Unable to conclude that Bennett's long criminal history contains three convictions that qualify under ACCA post-Johnson, the Court GRANTS Bennett's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 255) and ORDERS that Bennett be resentenced under 18 U.S.C. § 922(g)(1).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 6th day of July, 2016.

---

[8] To the extent the Government indicated it might alternatively rely on Bennett's 1975 conviction for assault upon a police officer (PSR ¶ 42), the Court notes that it has insufficient information in the record to determine whether that this conviction was in fact a felony. (See Gov't Response (ECF No. 261) at 13; Bennett Reply (ECF No. 262) at 1 n.1.)